PER CURIAM.
| ]This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Byrlyne June Van Dyke, an attorney licensed to practice law in Louisiana but currently on interim suspension.
PRIOR DISCIPLINARY HISTORY
In 1998, respondent was twice admonished for failing to cooperate with the ODC in its investigations.
In 2004, respondent’s parents died two months apart, and respondent had a falling out with her siblings. Devastated by these losses, respondent began drinking excessively, gambling excessively, and using cocaine, all of which resulted in her ignoring the responsibilities of her law office. When a disciplinary complaint was filed against her, respondent sought help from the ODC. The ODC suggested that respondent consider transferring to disability inactive status. Respondent agreed, and the court ultimately transferred her to disability inactive status in December 2004. In re: Van Dyke, 04-2874 (La.12/8/04), 889 So.2d 223.
Five and a half years later, the ODC petitioned the court to transfer respondent back to active status and simultaneously place her on interim suspension, based upon her guilty plea in a federal felony case. On June 16, 2010, the court granted the ODC’s petition, reinstated respondent to active status, and placed her on interim suspension. In re: Van Dyke, 10-1188 (La.6/16/10), 47 So.pd2 405; In re: Van Dyke, 10-1190 (La.6/16/10), 44 So.3d 262. *1221 To date, respondent remains on interim suspension.
Against this backdrop, we now address the misconduct at issue in the instant matter.
UNDERLYING FACTS

The Criminal Matter

Respondent electronically accessed the Southwest Louisiana Credit Union account of her former employee, without the employee’s knowledge or consent, as follows:
• $100 withdrawal on November 9, 2004 payable to Palace of Chance Casino;
• $321.62 withdrawal on December 3, 2004 payable to Central Coin;
• $100 attempted withdrawal on December 4, 2004 payable to Navaho Networks; and
• $300 withdrawal on December 6, 2004 payable to Citadel Commerce.
Respondent electronically accessed the Southwest Louisiana Credit Union account of a former client, without the client’s knowledge or consent, as follows:
• $18.65 withdrawal on October 14, 2004 payable to Citadel Commerce;
• $350 attempted withdrawal on October 18, 2004 payable to Citadel Commerce; and
• $200 attempted withdrawal on November 12, 2004 payable to Citadel Commerce.
Respondent also fraudulently obtained credit cards using the identity of her deceased client, Robert Louvat, to facilitate a wire transfer through Western Union Financial Services.
On November 6, 2008, respondent pleaded guilty to one count of aggravated identity theft in the United States District Court for the Western District of'^Louisiana. In the plea agreement, respondent admitted that she knowingly and without lawful authority transferred or used a means of identification of another person with the intent to commit a federal felony, in violation of 18 U.S.C. § 1028A(a)(l). Specifically, she admitted that she obtained detailed information from eleven clients or former employees, including the above-mentioned persons, and used that information without authority to obtain credit and/or money.
Respondent was sentenced to twenty-four months incarceration, followed by one year of supervised release. She was also ordered to pay restitution in the amount of $43,194.94 to her victims.

The Dignam Matter

In March 2003, Kinnon Dignam hired respondent to represent him in a criminal matter. Mr. Dignam’s parents paid respondent $3,500 for the representation. Thereafter, respondent failed to return telephone calls requesting status updates. Although respondent performed work on Mr. Dignam’s behalf, she did not complete the matter before her services were terminated by Mr. Dignam’s parents in November 2003. Nevertheless, she failed to provide the Dignams with an accounting and refund of any unearned fee.

The Wielgos/Young Matter

In late 2003, respondent prepared a last will and testament and related documents for Burl Dick Young. On October 3, 2003, Mr. Young executed a power of attorney naming Kathleen Wielgos as his agent. He also executed a will naming Ms. Wiel-gos as executrix and the legatee of one-third of his estate. When Mr. Young passed away on December 31, 2003, Ms. Wielgos directed respondent to initiate succession proceedings. Respondent charged and collected a $10,000 |4fee for all matters related to the succession. However, respondent failed to complete the sue- *1222 cession and failed to refund any portion of the unearned fee.
During the representation, respondent used Ms. Wielgos’ checking account number to obtain credit with an internet gambling site and electronically withdrew funds from Ms. Wielgos’ personal bank account without her knowledge or consent. Respondent pleaded guilty to federal felony charges for this criminal conduct as well as other criminal conduct as described in the criminal matter set forth above.

The White/DeClouet Matter

In December 2003, J. Michael DeClouet hired respondent to represent his mother, Nelma White, in an ongoing divorce case. Mr. DeClouet paid respondent $2,500 for the representation. Respondent did not complete the case before Mr. DeClouet demanded a refund of the unearned fee in November 2004. Nevertheless, respondent did not refund any portion of the fee.[1]

The Roddy Matter

In July 2003, Mary Roddy hired respondent to represent her grandson, Ryan Roddy, in a criminal matter. Ms. Roddy paid respondent $4,000 for the representation. Respondent failed to appear in court on Mr. Roddy’s behalf on at least three occasions. Nevertheless, she did not refund any portion of the fee.

The Turner Matter

In February 2004, Lacey Turner hired respondent to represent her in a criminal matter. Ms. Turner paid respondent $5,000 for the representation. During the course of the representation, respondent did not accept or return Ms. Turner’s |telephone calls. In June 2004, Ms. Turner informed respondent’s assistant that she would be unable to attend the trial set for December 6, 2004 due to health issues related to her pregnancy, and she was assured that respondent would obtain a continuance of the trial date. Thereafter, on numerous occasions, Ms. Turner could not contact respondent’s office because no one answered the telephone and the voice-mail was full. On January 21, 2005, Ms. Turner was arrested on a bench warrant for failing to appear for the December 6, 2004 trial.
In January 2010, the Louisiana State Bar Association’s Client Assistance Fund paid Ms. Turner $3,750 as a result of respondent’s wrongful retention of the unearned portion of the fee. Respondent admitted that she owes a refund to the Client Assistance Fund in connection with this matter.
DISCIPLINARY PROCEEDINGS:
In December 2010, the ODC filed formal charges against respondent,[2] alleging that she violated the following provisions of the Rules of Professional Conduct: Rules 1.2 (scope of the representation), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(f)(5) (failure to refund an unearned fee), 1.8(a) (conflict of interest), 1.16(d) (obligations upon termination of the representation), 3.2 (failure to make reasonable efforts to expedite litigation), 5.3 (failure to properly supervise a non-lawyer assistant), 5.5(a) (assisting another in the unauthorized practice of law), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act that reflects *1223 adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, | fideceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
Respondent initially failed to answer the formal charges, and as a result, the factual allegations thereof were deemed admitted and proven by clear and convincing evidence. However, the deemed admitted order was vacated upon respondent’s filing of a motion to recall same. Thereafter, she answered the formal charges, denying any misconduct. The matter then proceeded to a formal hearing on the merits.

Hearing Committee Report

After considering the testimony and evidence presented at the hearing, the hearing committee made the following factual findings:
The Criminal Matter — Respondent admitted to pleading guilty to one count of aggravated identity theft in federal court. She was sentenced to serve twenty-four months in prison, followed by one year of supervised release, and was ordered to pay $43,194.94 in restitution to the victims. With the exception of Mr. Louvat, all of the victims were very close friends of respondent’s. After Mr. Louvat’s death, respondent used one of his credit cards as a method of securing credit with an online gaming establishment. Although respondent testified that she lost approximately $30,000 to the casinos but had only stolen approximately $9,000 from her friends and clients, for some reason, the restitution was set at $43,194.94 with no accounting as to who was owed what. Nevertheless, respondent complied with orders for monthly payments until her supervised release ended and her restitution was transferred to the Federal Litigation Unit, to which she made one payment but has not heard back from them. Her understanding was that, once her sentence was concluded and her supervised release was completed, making restitution became a civil responsibility to the government. She is trying to get a ^statement regarding what is owed and is making an effort to pay the amounts ordered as restitution.
Respondent also testified that she completed required participation in substance abuse counseling and treatment and required participation in a mental health program and/or gambling program.
Based on these facts, the committee determined that respondent violated Rules 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct.
The Dignam Matter — Respondent admitted that she may not have returned some of the Dignams’ telephone calls when she was very busy. She also admitted that she owes them an accounting and some amount of a refund since she was terminated prior to completing the representation. She has not provided either because she has not been in a position to make restitution with all of the other restitution matters she has pending.
Based on these facts, the committee determined that respondent violated Rules 1.3, 1.4, 1.5(f)(5), and 1.16(d) of the Rules of Professional Conduct.
The Wielgos/Young Matter — Respondent took a fee of $5,000 for the work she performed on Mr. Young’s behalf prior to his death, which included a testament, a power of attorney, and other related legal matters. After Mr. Young’s death, Ms. Wielgos hired respondent to handle the succession. Respondent received an additional $5,000 fee for all the matters related to the succession, for a total of $10,000. She probated Mr. Young’s will and filed some documents, but she did not finish the succession. The succession was very difficult, and Ms. Wielgos called almost every *1224 day. Ms. Wielgos demanded that every item contained in Mr. Young’s house be placed on the inventory, which was done at considerable time and expense. Respondent admitted that it got to the point where she refused to take Ms. Wielgos’ calls because she was being totally unreasonable. Respondent also admitted that she failed to complete all matters that were ^necessary to finalize the work she was retained to do and that Ms. Wielgos was due a refund. Ultimately, another attorney completed the succession.
Respondent further admitted that, in 2004, she electronically used Ms. Wielgos’ checking account number to get credit with an internet gaming site and withdrew funds from Ms. Wielgos’ personal bank account without her knowledge or permission. However, this misconduct was included in the criminal matter discussed above.
Based on these facts, the committee determined that respondent violated Rules 1.5(f)(5), 1.16(d), and 3.2 of the Rules of Professional Conduct.
The White/DeClouet Matter — In December 2003, Mr. DeClouet paid respondent $2,500 to represent his mother, Ms. White, in a divorce case. It was an ongoing divorce case for Ms. White, and respondent was her third or fourth attorney. Respondent performed work for Ms. White, but she admitted that the work was not completed and that she owes a refund of fees.
Based on these facts, the committee determined that respondent violated Rules 1.3, 1.5(f)(5), 8.4(a), and 8.4(c) of the Rules of Professional Conduct.
The Roddy Matter — The fee agreement in this matter provided that, if the case was dismissed at arraignment, the fee would be $1,200, but if the case went to trial the fee would be an additional $2,800. Respondent failed to appear at Mr. Rod-dy’s arraignment in March 2004 and could not explain why Mr. Roddy did not get notice. Respondent testified that, on April 16, 2004, when Mr. Roddy was scheduled to appear in court in response to a bench warrant and a motion for bond forfeiture, she was in the hospital with her mother and did not appear in court with him. She also did not appear in court with him on May 3, 2004 for a hearing on her requests to waive formal arraignment, to enter a plea of not guilty, and for a jury trial. However, she did appear in court for him on November 3, 2004, which was re-fixed for April 25, 2005, but by that time, she had been transferred to [ fldisability inactive status and could not appear in court. Respondent admitted that she owes Mr. Rod-dy an accounting and a refund of fees because she did not complete the work.
Based on these facts, the committee determined that respondent violated Rules 1.5(f)(5), 8.4(a), and 8.4(c) of the Rules of Professional Conduct.
The Turner Matter — On February 21, 2004, Lacey Turner paid respondent $2,500 of a $5,000 fee to defend her against drug charges. Ms. Turner paid the balance on March 8, 2004. Respondent filed a pleading entitled Plea of Not Guilty to Charge Triable by Jm~y and informed Ms. Turner that she did not need to appear for the arraignment set for June 7, 2004.
During the representation, respondent did not accept or return Ms. Turner’s telephone calls. However, respondent’s assistant assured Mr. Turner that everything with her case was fine.
In June 2004, Ms. Turner informed respondent’s assistant that, due to pregnancy and related health issues, she would not be able to attend the trial set for December 6, 2004. Respondent’s assistant assured Ms. Turner that respondent would obtain a continuance. Thereafter, Ms. Turner was not able to contact respon *1225 dent’s office by telephone on several occasions; however, she finally spoke to respondent’s assistant on November 29, 2004 and was assured that the continuance would be obtained. Subsequently, Ms. Turner was again unable to reach respondent’s office by telephone.
On January 21, 2005, Ms. Turner was arrested on a bench warrant for failing to appear for the trial on December 6, 2004. Ms. Turner then learned that respondent had been transferred to disability inactive status and that a judgment of bond forfeiture had been granted against her on December 8, 2004. Another attorney was appointed to represent Ms. Turner and completed the representation.
| inRespondent admitted to these facts and that she let her client down. All of these events occurred during the period of time when respondent’s mother and father became seriously ill and died two months apart. Respondent admitted that she owes a refund to the Client Assistance Fund in connection with Ms. Turner’s case.
Based on these facts, the committee determined that respondent violated Rules 1.2,1.3,1.4,1.5(f)(5), and 1.16(d).
The committee then determined that the baseline sanction for respondent’s misconduct is disbarment, based on the ABA’s Standards for Imposing Lawyer Sanctions. In aggravation, the committee found a prior disciplinary record, multiple offenses, and illegal conduct. In mitigation, the committee found full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, a delay in the disciplinary proceedings, and the remoteness of the prior offenses. Additionally, the committee stated:
There was much testimony regarding mitigation. Witnesses testified that Respondent, prior to her criminal activity, was an intelligent, well respected attorney in the community who worked very hard for her clients and particularly for those who could not afford legal services. Respondent worked predominately in the domestic and criminal areas. Very credible and impressive witnesses testified that prior to Respondent’s medical issues, she always went over and beyond her duties and responsibilities as an attorney. All witnesses, one of whom had been a victim of Respondent’s use of her identity, testified very favorably on behalf of Respondent. The committee found that the weight of medical evidence clearly proved that Respondent’s mental disability was the cause of her criminal activity and as of the date of the hearing, Respondent had recovered from her mental disability as demonstrated by a meaningful and sustained period of successful rehabilitation.
Turning to the issue of an appropriate sanction, the committee considered the ODC’s suggestion that permanent disbarment is warranted for respondent’s misconduct. In addressing the issue, the committee stated:
|nThe severity of the charges against Respondent center around a period of time from July 2004 through December of 2004 in which she committed criminal activity and for which she pled guilty in federal court. These criminal matters ... involve Respondent using the identity of her friends and one client to secure credit with online gaming sites on the internet ... Respondent admitted that she committed these acts both in her plea in federal court and in her testimony, however could not explain why she had done so. Respondent testified that she just did not know why she had done the things she did, since she had never gambled like she had, used drugs or missed court dates. The committee *1226 heard from very impressive medical experts that clearly indicated that Respondent’s criminal actions were the direct result of specific stressors that occurred in her life just prior to the period of time that Respondent committed these acts. The stressors specifically indicated were the loss of her mother and father within two months of each other, when they had been basically healthy and the resultant attacks by her siblings that she had “killed” their mother by not continuing treatment for pancreatic cancer that medical advice deemed fruitless. There was further evidence that Respondent’s mental condition was compromised even earlier than the period from July 2004 through December of 2004 in which these criminal acts occurred when she lost a case in the [Louisiana] Supreme Court that shook her belief in the legal system, and caused Respondent to suffer from depression.
[[Image here]]
... Respondent clearly accepted the responsibility for her actions and showed significant remorse for actions. Respondent wanted to and was making efforts to make restitution but had not made much progress because of her long period of inactive status, her criminal conviction and the confusion over the amounts owed and to whom they were owed.
Based on this reasoning, the committee declined to recommend permanent disbarment and, instead, recommended that respondent be disbarred.
Respondent filed an objection to the hearing committee’s report and recommendation. Specifically, she objected to some of the committee’s findings regarding the rule violations and argued that a three-year suspension would be a more appropriate sanction.
11 aDisciplinary Board Recommendation
After review, the disciplinary board determined that the committee’s factual findings do not appear to be manifestly erroneous and are supported by the record. The board further determined that the record supports the committee’s conclusions regarding the alleged violations of the Rules of Professional Conduct with the following exceptions:
In the Wielgos/Young matter, the committee concluded respondent did not violate Rule 1.3 of the Rules of Professional Conduct despite its finding that she failed to complete all matters necessary to complete the work she was hired to do. Based upon this finding and the supporting evidence in the record, the board determined that respondent did violate Rule 1.8.
In the Roddy matter, again the committee concluded respondent did not violate Rule 1.8 despite its finding that she failed to appear at Mr. Roddy’s arraignment and otherwise failed to complete the representation. Based on this finding and the supporting evidence in the record, the board determined that respondent did violate Rule 1.3.
Finally, in the Turner matter, the committee concluded respondent did not violate Rules 8.4(a), 8.4(c), and 8.4(d) despite its finding that her office staff gave Ms. Turner false assurances that her criminal trial would be continued and that the matter was being handled. Noting no continuance was sought or granted, which ultimately resulted in Ms. Turner’s bond being forfeited, the board determined the record supports a finding that respondent violated these three rules.
The board then determined that respondent knowingly and intentionally violated duties owed to her clients, the public, the legal system, and the legal profession. She caused significant actual harm to numerous clients by failing to return un *1227 earned fees, failing to appear in court, and abandoning legal matters. However, her most egregious misconduct involved stealing the identity of a 113deceased client and withdrawing funds from the personal bank accounts of other clients, friends, and employees without authorization. Respondent also harmed the legal system by failing to appear in court in multiple client matters, which delayed those legal proceedings. Furthermore, her criminal acts harmed the public and the image of the legal profession. Like the committee, the board determined that the baseline sanction is disbarment.
In addition to the aggravating factors found by the committee, the board also found the following to be present: a dishonest or selfish motive, a pattern of misconduct, and indifference to making restitution. In mitigation, the board found full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, mental disability or chemical dependency including alcoholism or drug abuse, imposition of other penalties or sanctions, remorse, and remoteness of prior offenses. The board elaborated on its reasoning behind finding the mitigating factor of mental disability or chemical dependency including alcoholism or drug abuse, stating:
Based upon the facts of this matter, the Board gives Respondent’s mental breakdown great weight as a mitigating factor. First, both experts who testified in this matter agreed that Respondent suffered from an acute stress disorder and major depression in the summer and fall of 2004. These conditions led to Respondent’s use of cocaine, causing impaired judgment and excessive gambling. All of the misconduct in this matter, with the exception of Count II [ (the Dignam matter) ], occurred during the time period that Respondent was suffering from her mental breakdown. Second, both experts testified that Respondent’s criminal conduct was a direct result of her mental breakdown ... The experts did not testify about the relationship between Respondent’s other professional misconduct and her mental breakdown. However, the concentration of the professional misconduct to the time period in which Respondent suffered her breakdown and engaged in the criminal conduct makes it highly probable that there is a close causal nexus between the two. Third, both experts testified that Respondent has made significant progress in her recovery. There is no evidence in the record that Respondent has abused drugs, gambled, or engaged in | ^criminal activity since 2004. Fourth, both experts agreed that Respondent is unlikely to relapse into criminal activity. Thus, based on application of the analysis provided by the ABA Standards for Imposing Lawyer Sanctions, as adopted by the Louisiana Supreme Court, to the facts of this matter, the Board gives Respondent’s mental disability at the time of the misconduct great weight as a mitigating factor.
In light of the significant mitigating factors present, particularly respondent’s mental disability at the time of the majority of the misconduct, the board determined that permanent disbarment is not warranted. Instead, the board recommended that respondent be disbarred. The board further recommended that respondent provide an accounting and appropriate refund to her clients subject of the formal charges and make restitution consistent with the conditions of her criminal conviction.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this *1228 court. La. Const, art. V, § 5(B). When the disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is whether respondent’s crimes warrant discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E); In re: Boudreau, 02-0007 (La.4/12/02), 815 So.2d 76; Louisiana State Bar Ass’n v. Wilkinson, 562 So.2d 902 (La.1990). The discipline to be imposed in a given case depends upon the seriousness of the offense, the circumstances of the offense, and the extent of the aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Perez, 550 So.2d 188 (La.1989).
| isHere, respondent pleaded guilty to aggravated identity theft. This crime is a felony under federal law and clearly warrants serious discipline. Additionally, respondent neglected legal matters, failed to communicate with clients, and failed to refund unearned fees. The record supports the rule violations found by the hearing committee and modified by the disciplinary board. Additionally, the record supports a finding that respondent violated Rule 1.4 of the Rules of Professional Conduct in the Wielgos/Young matter.
Respondent knowingly and intentionally violated duties owed to her clients, the public, the legal system, and the legal profession, causing significant actual harm. The baseline sanction for this type of misconduct is disbarment.
Aggravating factors present include a prior disciplinary record, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and illegal conduct. The mitigating factors found by the board are supported by the record.
In concluding that permanent disbarment is not an appropriate sanction in this matter, both the hearing committee and the disciplinary board gave great weight to the mitigating factors and placed particular emphasis on respondent’s mental breakdown. We agree that the greatest weight should be given to these mitigating factors, and accordingly, we find that it is not necessary to deviate from the baseline sanction.
Accordingly, we will adopt the board’s recommendation and disbar respondent. We further order respondent to provide an accounting and appropriate refund to her clients subject of the formal charges and make restitution consistent with the conditions of her criminal conviction.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of lifiByrlyne June Van Dyke, Louisiana Bar Roll number 23581, be stricken from the roll of attorneys and that her license to practice law in the State of Louisiana be revoked, retroactive to June 16, 2010, the date of her interim suspension. It is further ordered that respondent provide an accounting and a refund of unearned fees to Richard and Brenda Dignam, Kathleen Wielgos, the Estate of J. Michael De-Clouet, Mary Roddy, and Lacey Turner, or to the Louisiana State Bar Association’s Client Assistance Fund, as applicable. Additionally, respondent shall make restitution consistent with the conditions of her criminal conviction. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. The record indicates that Mr. DeClouet died in June 2010. Respondent's obligation to refund the fee paid in connection with the representation of Ms. White is now owed to Mr. DeClouet's estate.

. The formal charges initially consisted of ten counts of alleged misconduct. However, the hearing committee found no misconduct in three of the counts, and the ODC decided not to pursue the counts further. Therefore, our opinion does not address these counts.